Good afternoon, Your Honors, and may it please the Court. I'm Greg Heo on behalf of the Plaintiff MarketQuest Group, Inc., which does business as all-in-one, and joining me in the courtroom today are Michael Lane of Lewis-Cohen in San Diego, who is the trial counsel for plaintiffs in the case below, and also we have Harrison Caron-Cohen, the plaintiff's president and vice president, respectively, in the courtroom with us today, and we're pleased to finally be here before you, and again, thank you for accommodating our scheduling issues. It's our pleasure. Well, we know this was a back-breaking assignment, so we thought I would accommodate you. Yes, Your Honor. Okay. Many issues have been briefed in this case, but there's really just two or three observations that I would like to make in the brief time that we have and to focus really on two main overarching principles, and one is the notion, the Supreme Court's directive in K.P. Permanent Makeup 1, that the overall fair use analysis must focus on whether the defendant's use of the challenge designation was objectively fair, and so — That's something, as you undoubtedly know, the Ninth Circuit has not yet specifically addressed, whether reverse confusion has to be specifically pleaded. Let's assume for a moment that we have to do that. In your judgment, what would that requirement be, and secondly, would your pleading meet that requirement were we to adopt that issue? Pleading confusion and yes are the quick answers. Okay, and what would be the elements of the pleading for reverse confusion? Well, the cases elsewhere that have addressed this issue, as recited in our brief and I'm sure that you've read and known, say that the only thing that is required to place reverse confusion in an active case in the pleading is to make an allegation of confusion. The important thing to realize is that we're not suing, you know, reverse confusion is not our cause of action. Let me just — you're referring to the First Circuit case on this one? Yes, the one — well, first of all, the — well, there's a Western District of Washington case. Okay, I'd like to stick with the appellate court. It was affirmed by the Ninth Circuit. It was affirmed by the Ninth Circuit? Yes, Your Honor, it was. And it's called Playmakers LLC v. ESPN. The Ninth Circuit did affirm that in 2004. And it said that reverse confusion is — and you may remember this from the brief — that reverse confusion is merely a descriptive term for certain circumstances giving rise to a likelihood of confusion that is implicitly incorporated in 15 U.S.C. 11141, is actionable under 1125A, and is available to all plaintiffs who allege a likelihood of confusion. Let me get some clarification from you, then. Paragraph 29 of your First Amendment complaint reads to me like a forward confusion allegation. No question about it, Your Honor. Okay. Don't deny it at all. So 28, a little ambiguous, 30, 31, and so on, more general. But putting 28 aside for the minute, what impact does an allegation, in this case, paragraph 29, have if it could only apply to a forward confusion? Doesn't that muddy the waters a bit? The cases that are out there so far say no. And we gave three examples in our brief, too, from other circuits where only — where very, very specific allegations of forward confusion only were made. One was the Trouble case at 179 F sub 2nd, 295, where the plaintiff successfully changed its theory of confusion from forward to reverse after the close of discovery. It never mentioned reverse confusion before then, but was able to do it at that time. What about survivor media, though? Survivor media, I've got to be honest with you, and I was in the brief, is that is an anomaly. There's really no way for us to — I know what the defendants have argued about it, and what the court in Survivor said, as you know, is they said, well, these guys have pleaded a prima facie case of reverse confusion, but they haven't pleaded forward confusion, so forward confusion isn't in the case. So it's the exact opposite of what we have. Didn't they find that the other one was — I think you said was not plausible, something to that effect. That's right. But we don't — what we don't have, and I tried to find it, we don't have the complaint. So we really don't know what it said. So it's very hard to make out what they meant by it, but I did propose, we did propose in our brief a rationale that makes sense under the structure that we've been advocating, and that is this line of cases that say that whenever you make an allegation of likelihood of confusion, because reverse confusion is not mentioned in the Lanham Act anyway, which is why we have the delay in the Ninth Circuit in recognizing it, of course. Right. Not until 1998 in DreamWorks did the Ninth Circuit even recognize it. But since forward confusion is all that's in the Lanham Act, the whole idea of reverse confusion is that the courts that have accepted reverse confusion say that it is implied into Section 1114. So that is the basis for these courts saying if you allege forward confusion as it's written in the statute, since reverse confusion is implicit, you get it automatically. So all I can think of, and we can only speculate really, or I can on the survivor case, is that if it doesn't work in reverse, since reverse confusion is not mentioned in the statute, you can't make a pleading, plead reverse confusion and have forward confusion implied into it. So I can. Well, that's the only problem I have with that. And again, I grant you, sir, Fisher is an unusual case. It is. It nonetheless, at least in my reading, says, okay, there's confusion, but if the pleading alleges something that is basically highly improbable, then you haven't pled a cause of action. Why wouldn't that also be true in reverse? That was a forward confusion case. Why wouldn't that be true in a reverse? Well, I think that, like for example, you refer to paragraph 29, and that's one specific allegation in the complaint. But the complaint also has allegations of confusion as to source, sponsorship, or origin, which are certainly general enough to encompass reverse confusion. And again, these cases, first of all, at the outset, I have to say, which we said in our brief, and I'm sure you saw it too, is that we don't think that this issue is even properly before the court and that it's been waived. And so I'm happy to talk with you about it because it's fascinating to me as well. But this was first raised in a reply brief filed by the defendants on summary judgment below, and plaintiff was not permitted to respond to the arguments. And as I'm sure you all know, arguments first presented in a reply brief are not admissible unless the other party is given an opportunity to respond. You had the reply brief at the summary judgment below? Yes, Your Honor. But not the reply brief in our court, right? Correct. Okay. Correct. And so basically we can waive it or not waive it as we see fit? No, it was not in the, it was waived, we argue that it was waived in the district court below. Right. And that was, we also note that reverse confusion has been in this case since 2011. I mean, when Judge Sammartino ruled on preliminary injunction back in 2011, he treated this as a reverse confusion case and applied reverse confusion doctrine. Judge Bichotte, when she had the case on summary judgment and the actions that are under review right now, the orders under review right now, she spoke of reverse confusion. And so, I mean, we do feel that it's very heavily waived. We agree and can't defend survivor. It's an anomaly and I really just don't know what to tell you about it. But we can point out all of the other cases nationwide that say that you really don't have to plead anything with confusion. And what I started to say at the beginning, and if I can just repeat it right now and finish that part, our case is for trademark infringement, right? It's not an action for reverse confusion. It's not an action for forward confusion. It's an action for trademark infringement. Trademark infringement has to involve confusion of some sort. And reverse confusion is just one theory of confusion. And forward confusion is another. And they should be equally available at any time. Can you explain briefly what your theory of damages is if this is a reverse confusion case? Yes. Briefly, I can. I don't have a lot of in-depth knowledge about it, but my understanding, and if I'm wrong, I'll correct myself on rebuttal, but my understanding about it is that because the public started to confuse plaintiff with defendant, you know, in reverse, and plaintiff, the defendants rather, Bick, Norwood, et al, were having some pretty serious financial dips at a time when the overall market in the promotional product industry was skyrocketing, that their reputation actually hurt the plaintiff and damaged us. And the other question I had for you is, this is a summary judgment case, and I'm trying to find case law that talks about applying summary judgment to fair use and confusion where you have to balance the two. And same question I'm going to have for the other side when he has an opportunity. I found one published case, Sorenson v. WD-40 out of the Seventh Circuit, that granted summary judgment, or affirmed a summary judgment at the fair use stage, or fair use argument. Are you aware of any cases that talk about how courts at summary judgment are supposed to reconcile and make some sort of balancing finding at the summary judgment stage? Yes, Your Honor. Other than fortune that says summary judgment should be rarely granted. Well, yes, Your Honor, and I have some notes on it, but I know that in, is it K.P. Permanent II, the Ninth Circuit has said that confusion is an integral part of the fair use defense, and you have to decide it. And there is kind of a scale that the higher the degree of likelihood of confusion, then the lower the possibility is that we're dealing with fair use. Perhaps I misunderstood what my colleague asked you. Maybe I did, too. I thought he was asking how can this be decided in the summary judgment context. Yes. Is that what you're asking? Bingo. I have the same question. Oh, it can't be. I would absolutely say that it can't be. In fact, in your case, fortune dynamic and K.P. Permanent II that preceded it, well, K.P. Permanent II, the Ninth Circuit just said summary judgment on fair use is improper, is also improper. That's the verbatim sentence. And that was reiterated in fortune dynamic, which, of course, Judge Smith, you were in that case. You know, we have a lot to talk about, and I have three minutes and 29 seconds left. May I reserve time for rebuttal? Sir, you want to save that time right now and come back and rebuttal and do it? You can't reserve out of a nothing. You've got to reserve it out of your time. So if you want to reserve it now and come back and give us the balance later on, you certainly may. Well, I may not be understanding you. You want to stop the clock and save your three minutes, right? I want to stop the clock and let Counselor Seibert get up, and then I'll come up for rebuttal. Oh, you absolutely may. You can sit down, save your time, and he'll come up and speak, and then you come back. Okay. Wonderful. See you then. You can rest your back. Thank you, Your Honor. Okay. This is Mr. Seibert, right? Very good. Good afternoon. Good afternoon, Your Honors. Good afternoon, Justice Corman. May it please the Court, I can certainly address some of the same issues and questions that the panel raised. But I would start out by saying there are two, as I read the appellate brief, there are two main criticisms that the appellant makes of the district court decision. Criticism number one is that according to them, Judge Beshant conflated, I'm not even sure what that word means, two factors, descriptiveness and use other than as a trademark. She may not get a Pulitzer Prize for her writing, it jumps around a little bit, but I think it's clear from the district court decision that Judge Beshant addressed both. The non-trademark use is addressed at excerpts of records 14 to 15, and the descriptiveness is addressed at excerpts of records 16 and 17. Are you talking now about all-in-one or the right choice? Both, Your Honor. On both, okay. The second, and I think the major focus, the second criticism is that the district court did not consider likelihood of confusion. And I'm going to get to that it makes no difference whether it's reverse or forward confusion. As an aside, I believe reverse confusion does have to be specifically alleged. I think that's the Murray v. Cable NBC case, which we've cited in our briefs. That's a Ninth Circuit case. And it's been a little bit of a moving target in this case. The plaintiff asserted forward confusion when it suited its convenience and reverse confusion when it didn't. But be that as it may, it's simply not true that the district court did not consider likelihood of confusion. First of all, the appellant never . . . Excuse me, counsel. Correct me if I'm wrong about this, but I thought, and I'm just going to check my notes here, I thought in the all-in-one portion of the opinion that the district court concluded that your client was protected by fair use without fully addressing whether confusion was likely. Is that mistaken? I believe that the court, the district court, said that it was unnecessary because . . . Right. That's what I thought, too. Yeah. The district court said it's not necessary because it's fair use, but did not weigh whether there was likelihood of confusion, right? It did not get into the sleek factors, Your Honor. Okay. And also in the right choice, if I understood that correctly, that the district court applied fair use analysis after determining that there was no evidence of likely confusion. Isn't that also correct? I think that's right, Your Honor, and the reason is that KP permanent has sort of a sliding scale. The more objectively fair a use is, the more obviously descriptive it is. Let me ask you this. Do you agree that whether you're speaking of forward confusion or reverse confusion, that the, if you will, the primary gravamen of that and, of course, the trademark act itself is the likelihood of confusion in either one? No, Your Honor. You don't? I do not. With respect, the essence of the fair use defense is that people are entitled to use descriptive terms in the English language, and, in fact, the U.S. Supreme Court told us in the KP permanent case that some level of confusion, and there isn't any here, the evidence below is completely defective and wasn't even before the district court on this summary judgment. The Supreme Court said that some level of confusion is acceptable and compatible with fair use where the plaintiff picks a mark that is basically descriptive. Okay. Does that go to the sleek craft strength of the mark factor, or is it something separate? I think it's something separate, Your Honor. I think it goes to the descriptiveness of the mark. And what we have here in both cases where something is all in one, you put everything together in one, one of my clients, Norwood, had eight separate catalogs that didn't work commercially, so they decided to put them all in one. And my other client, Bick, had sold its round stick pen for 30 years, and they used the not very good pun, frankly, the right pen choice for 30 years. They didn't even use the right choice. They used the right pen choice. In both cases, Your Honor, every instance of use was not only descriptive on its face, but was used in conjunction with my client's own trademarks. And, you know, you can see that in the appellant's own briefs. If you look at figure 7 on page 23 of the appellant's opening brief and figure 9 on page 25 of the appellant's opening brief, you've got the Bick trademark there in big yellow octagon or rectangle, and you've got Norwood in heavy print. So let me be sure I understand your point, because I frankly didn't see any case law that backs this up, but you're going to give me some, I'm sure. Is it your position that even if, as the court found here, your client knew of and used two trademarks within a one-year period, that the fact that the use was, number one, kind of common, very derivation, very common in use, and that the Norwood mark and the Bick mark and other things were put on there to make clear that this was a descriptive use and not a trademark, that that's enough to basically do away with any other analysis, and that's the end of the story, like the district court did. Is that right? And what's your case for that? Well, the case is that mere knowledge of a plaintiff's mark, even in a reverse confusion case, which I don't think this is, the Sorensen case, the Pac-Man case, and the Freedom card case, all of which are cited in our briefs, say that mere knowledge of the other side's mark does not equal bad intent. But that has to go with the issue of good faith, bad faith, does it not, which is only a part of the whole issue. But in terms of the infringement and confusion concept, how does that deal with that? Forgive me, Your Honor. In other words, if I'm understanding you correctly, the Freedom card, Pac-Man, and so on cases, if I recall them correctly, what you're talking about in terms of mere knowledge is not enough per se to conclude that there's bad faith on the part of someone who uses a mark. But that's a different question than the one I'm raising, which is, does a district court, without finding confusion, have the right to terminate the case, basically, without making any of the sleepcrap findings or any of the other findings that are typically made to make a determination of good faith and fair use? Just by that alone, is that what you're advocating? In certain cases, yes, Your Honor. And in this case? In this case, yes, Your Honor. And not just one district judge, two district judges. The Judge Sammartino denied preliminary injunction in this case because she found that there was likelihood of success on a fair use defense. And what followed was three years, frankly, of scorched earth litigation and World War III discovery because the other side. I'm just speaking for myself. If I don't find in our case law that, I mean, I have the greatest regard for these district judges. They're fine people, fine judges. But if they're wrong about the law, then I can't leave it at that. So I'm looking for a case, not their reputation, because we're in no way criticizing either one of them. They're fine people. But I need to see a case that says you can leapfrog over the analysis that, at least I understand, is required before you can make a good faith or rather a fair use determination, just off the top of the head. I'd respectfully disagree. Okay. What's your case? And my case is K.P. Permanent from the U.S. Supreme Court and K.P. Permanent from this court. And I would say the lessons of those cases are that some confusion analysis may be allowed, but it is not required for a fair use defense because a fair use defense is a complete defense and it is compatible and it is acceptable to have some level of confusion. I'm familiar with both those cases. K.P. Permanent. Where in either case, the Supreme Court or our court, what's the pin site that says that the district court can basically overlook or not undertake any kind of an analysis under Sleek-Craft or any of the other cases if he or she determines that the fair use is ultimately going to work? Could you just go right to it? Three responses, Your Honor. Okay. Number one, if I were smarter and had photographic memory, I could give you the pin site for where the U.S. Supreme Court did say that some level of confusion is acceptable and compatible with the fair use defense. Number two, I would put to this panel that a fair reading of the Supreme Court decision in K.P. Permanent, the Ninth Circuit decision in K.P. Permanent, and the Third Circuit decision in Freedom Card tells you that your advisability of making any kind of a confusion analysis goes down as the obvious descriptiveness of the phrases used go up. But again, this gets back to what my colleague asked about. Here you're talking about something in a summary judgment setting. The very fact that you're weighing, isn't that something that needs to be done in other than a summary judgment context? Not necessarily, Your Honor, and that gets to my third point. Okay. It is often said that summary judgment is disfavored in trademark infringement cases, but nevertheless it does get granted. And the summary judgment standard where insufficient evidence is presented to raise a material issue of disputed fact, where no reasonable juror or trier of fact could find one way, can apply based on the circumstances. With respect, counsel, you're talking about boilerplate issues on what gets handled in summary judgment. What we're talking about here is an analysis of a scale. By definition, if the central point of that is whether there's confusion, which is the central point of an infringement, how can that be anything other than a material fact that cannot be decided at the summary judgment stage? Because that is not the central point. The infringement and the confusion is not the central point of a case like this where the focus is fair use, where it doesn't matter if there's some degree of confusion, where the marks are descriptive on their face, where they are used descriptively on their face. That is a complete defense, and you do not get to the Sleekcraft analysis in the first place. It seems to me the best case for that argument is Sorenson from the Seventh Circuit, because in that case the Seventh Circuit did go straight to fair use, and for their statutory copyright or trademark claim, they did not engage in the Seventh Circuit's version of the Sleekcraft. Is that correct? I think that is correct. Other than Sorenson, which I think is a very good case for you on this point, can you think of any other cases like Sorenson where they went, the court went straight to fair use and actually granted summary judgment? Like I said, that's why I think it's a very good case for you. I have to be honest with you. Off the top of my head, I can't. Okay. If the court would like us to submit bench briefs after the fact, we'd be happy to do so. Well, you're always permitted under Rule 28J to submit case law, so you can certainly do that according to that rule. And I have 51 seconds. I would finish with a policy argument. And the policy argument, as I understand the appellant's argument, it boils down to that mere knowledge that the other side claims a mark is sufficient to establish bad intent. And I'd suggest to the panel that cannot be because then all somebody would have to do, they could arrogate a descriptive word as a trademark. Counsel, with respect, they don't necessarily have to be advocating that. They can simply be saying, hey, the court didn't do an analysis of whether there was confusion here. And under either mark, if you haven't done that, you can't get to a fair use analysis, at least under some people's readings of the cases. But, Your Honor, what they're saying is that the necessary element of bad intent, on my client's part, would be established merely by the knowledge of their claim. Correct. And that can't be the case. I understand. Because that would say Bed, Bath & Beyond could send out letters and say no other furniture store could use bed or bath. I understand. Do any of my colleagues have any other questions for this counsel? How were you prejudiced by the failure to allege reverse trademark violations? I would say, Justice Corman, we- Judge. Judge Corman. Remember, there's no justice on the Ninth Circuit. Yeah. Sorry. We're judges. We were prejudiced by being precluded from addressing this issue on the summary judgment motions below. Had we been given that opportunity, I'm confident that we would have shown there was no merit to it. It's not right that we have to face this issue for the first time on appeal. And what would happen if we agreed with you? Would we remand, would leave to replead? I don't think so, Your Honor. I believe that you would simply affirm the district court's grant of summary judgment on the fair use defense as providently granted. Well, the district judge did discuss this on page ER 13, I believe, ER 16, where he talks about the defendants. Primarily, Marquis argues that showing defendants knowledge of the trademarks alone is insufficient to establish bad faith. They opine that unless the court imputes bad faith to any larger organization that commits knowing acts of infringement, this court would wash away the reverse confusion doctrine. And he goes on to then discuss this. She goes on. I'm sorry. Yes, Your Honor. Forgive me. I'm not clear on what the question is then. Well, the court appears to be considering the reverse confusion doctrine. I see what you mean. Well, in that case, I would contend that the issue's already been addressed. And to be clear, Your Honor, I have to be honest with you. I don't think it really makes much difference whether the confusion is forward, reverse, or sideways. You don't get into that depth of analysis under the fair use defense where the uses here are so obviously descriptive and objectively fair. All my clients did was tell their clients what they were doing. They were consolidating their catalogs, and you should pick this pen because it's the right choice. They always did both of those things with their own trademarks. There's no conceivable or possible confusion, and frankly, I think it would be very unfair to my clients to force them to go to trial and engage now in a fifth year of litigation where the uses here are objectively fair and descriptive on their face. And that's what two district judges found. Any other questions? All right. Thank you, counsel. We appreciate it. So we're going to hear a rebuttal now. Thank you, Your Honor. Greg Keto back again. Bob Lee from the background with MarketQuest. Your Honor, I have three minutes left, but unfortunately what he just said, it's mandatory that I respond to that, because he did not read Judge Smith page 1031 of your case, Fortune Dynamic, and I know that's what you were getting at. It is absolutely an error. It was an error, and remand is required for this reason alone, for Judge Beshant to issue, without it going to a jury, a summary judgment on fair use without considering likelihood of confusion. Moreover, that directly, what the defendants have been arguing in their briefs and what Judge Beshant argued in her decision directly contravenes both the precedent of the U.S. Supreme Court and this Court, because in KP Permanent 1, the whole case was convened to resolve a conflict between the circuits. As you know, the Ninth Circuit for years didn't allow any fair use to be pled as a defense until you had, if there was any likelihood of confusion, and then other circuits were the opposite. The Supreme Court resolved it. KP Permanent 2, I'm going rapidly because I have little time, KP Permanent 2 reaffirmed that, said confusion is relevant, and then your case at page 1031 pretty much said they had to do it. You have to go over, do confusion, and every case since then that has dealt with this issue, they do have to do it, and in your case they also said they have to go to the jury. I would like to, there's so much I'd like to talk to you about, but I'd like to give you one analogy that you won't get anywhere else that I think is helpful on this issue of whether their use was descriptive and all, because we feel that this whole argument about the descriptive use and so forth is just another example of the defendant's bad faith, which I haven't had an opportunity to talk to you about, but just consider this one analogy, and I think it's clear. There's a speaker company, and they're called Acoustic Research, and they make speakers. Acoustic Research is a registered trademark. It is suggestive, and it's not descriptive, because you can't tell when you see Acoustic Research whether you're talking about a speaker or what you're talking about. All right, let's say somebody, I came out and I marketed a pamphlet, and I said, and it had Acoustic Research on the top of it, and underneath it it said two-way speakers, one-way speaker, car speaker, and then on the back page, page 1 or page 14, like the defendants put in their brochures, we put a whole explanatory page, and we said, our speakers are so good because they're the fruition of years of acoustic research. What the defendants are trying to do, which we believe respectfully, I don't know a better word for it, is a scam, is they're trying to convert a suggestive use into something descriptive by adding explanatory verbiage to it, and you can't do that, Your Honor, because when you examine a mark, you go to the person and you say, what does this mark mean to you? What would you believe this mark to be if you were faced with it? What product is it? And if they have to exercise their imagination, it's suggestive. You don't get to show them all kind of explanatory verbiage to qualify, you know, the analysis of that mark. As you can see, the time is up. My time is up. It is up, and we're going to forget that you said the other guy was involved in a scam, because we know you didn't mean that. We don't do that here. We don't do that here. We just want the law. We'll be able to consider everything. Let me ask my colleagues whether any of them have any additional questions. How about Judge Corman, anything? In the preliminary injunction opinion, the district court did discuss the evidence of actual confusion. Yes. And what you had proffered. Did you proffer anything more? Yes, we did. Over the course of the case after that, yes, we did, Your Honor. We had expert reports. We had more evidence of confusion that came out in discovery. We did, indeed, do that. And much of it is discussed in our brief. It is available in the brief, I believe, I hope. Any other questions? We thank you both, and we appreciate that sometimes these cases can be hotly litigated, but I assure you that we will be analyzing this based upon the law and the facts and not any of the hot feelings that may exist. So we thank you both. The case just argued is submitted, and the court stands adjourned for the day. Thank you so much, Your Honor. All rise.
judges: M. Smith, Owens, Korman